☑ Original ☐ 

CLERK'S OFFICE
A TRUE COPY
Feb 21, 2024
s/JDH

Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
a. Blue Apple iPhone (unknown model, unknown serial number, contained on Milwaukee )   Case No. **24-M-344 (SCD)**
Police Department Inventory No. 24000904, Item 1, TARGET CELL PHONE 1) )
b. Black Apple iPhone with "Backwoods" branded case (model unknown, serial no. )
unknown, contained on Milwaukee Police Department Inventory No. 24000904 Item 2, )
TARGET CELL PHONE 2) )

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:  Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Eastern_____ District of _____Wisconsin_____
*(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

Please see Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before _____3-6-24_____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m. ☒ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Honorable Stephen C. Dries_____.
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:  _____2-21-24    1:10 pm_____  *Stephen C. Dries*
                                                              *Judge's signature*

City and state:  _____Milwaukee, WI_____  _____Honorable Stephen C. Dries, U.S. Magistrate Judge_____
                                                                   *Printed name and title*

**Return**

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|
| | | |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

1.      The property to be searched is one electronic storage device associated with Milwaukee Police Department Inventory no. 24000904 which can be further described as;

    a.  Blue Apple iPhone (unknown model, unknown serial number, contained on Milwaukee Police Department Inventory No. 24000904, Item 1, **TARGET CELL PHONE 1)**

    b.  Black Apple iPhone with "Backwoods" branded case (model unknown, serial no. unknown, contained on Milwaukee Police Department Inventory No. 24000904 Item 2, **TARGET CELL PHONE 2**)

1

## ATTACHMENT B

### Particular Things to be Seized

1.     All records on cellular phones related to violations of 18 U.S.C. § 2119 (carjacking), Title 18 U.S.C. § 924(c) (use of a firearm during the commission of a violent crime).

      a.   any information related to possession of firearms or ammunition (including photographs, text messages, emails, or any other communication information);

      b.   GPS information and any other location service data from the phone and/or from any downloaded applications;

      c.   Internet search history and browser history related to firearms or location searches;

      d.   call history;

      e.   contact list, to include names, addresses, phone numbers, and/or email addresses;

      f.   any video and/or photograph(s) on the phone related to firearms;

      g.   any text messages exchanged or drafted that seem to relate to firearms, controlled substances, and/or other criminal activity;

      h.   lists of customers and related identifying information;

      i.   any information recording the cell phone holder's schedule or travel; and

      j.   all bank records, checks, credit card bills, account information, and other financial records.

2.  Evidence of user attribution showing who used or owned the devices at the time the

2

things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

3. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of electronic storage and any photographic form.



CLERK'S OFFICE
A TRUE COPY
Feb 21, 2024
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

In the Matter of the Search of

*(Briefly describe the property to be searched
or identify the person by name and address)*

a. Blue Apple iPhone (unknown model, unknown serial number, contained on
Milwaukee Police Department Inventory No. 24000904, Item 1, TARGET
CELL PHONE 1)

b. Black Apple iPhone with "Backwoods" branded case (model unknown,
serial no. unknown, contained on Milwaukee Police Department Inventory
No. 24000904 Item 2, TARGET CELL PHONE 2)

)
)
)
)
)
)
)

Case No. **24-M-344 (SCD)**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

Please see Attachment A.

located in the _____ Eastern _____ District of _____ Wisconsin _____ , there is now concealed *(identify the person or describe the property to be seized)*:

Please see Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

❒ contraband, fruits of crime, or other items illegally possessed;

❒ property designed for use, intended for use, or used in committing a crime;

❒ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2119 | Carjacking |
| 18 U.S.C. § 924(c) | Use of a Firearm during the Commission of a Violent Crime |

The application is based on these facts:

Please see Affidavit.

☑ Continued on the attached sheet.

❒ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Sean Carlson, Special Agent, ATF
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ telephone _____ *(specify reliable electronic means).*

Date:  2-21-24

_____
*Judge's signature*

City and state:  Milwaukee, WI

Honorable Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

<u>**AFFIDAVIT IN SUPPORT OF**</u>
<u>**AN APPLICATION FOR A SEARCH WARRANT**</u>

I, Sean Carlson, being first duly sworn, hereby depose and state as follows:

<u>**INTRODUCTION AND AGENT BACKGROUND**</u>

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property, two cellular phones described in Attachment A, and the extraction of evidence described in Attachment B.

2.      I am employed as a Special Agent with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") assigned to the Milwaukee Field Office since November 2015. I have been employed as a full-time law enforcement officer for approximately fifteen years. Prior to my employment at ATF, I was a Patrol Officer at the Hammond Police Department in Hammond, Indiana for over four (4) years, and then I served approximately five (5) years as a Federal Air Marshal with the U.S. Department of Homeland Security.

3.      As a Special Agent, I have participated in the investigation of firearms and narcotics-related offenses, resulting in the prosecution and conviction of numerous individuals and the seizure of illegal drugs, and weapons. As a firearms investigator, I have interviewed many individuals involved in firearm and drug trafficking and have obtained information from them regarding acquisition, sale, importation, manufacture, and distribution of firearms and controlled substances. Through my training and

1

experience, I am familiar with the actions, habits, traits, methods, and terminology utilized by the traffickers and abusers of controlled substances.

4. Based on my training, experience and participation in drug trafficking and firearms trafficking investigations, I know and have observed the following:

5. I have relied on informants to investigate firearms trafficking and drug trafficking. Through informant interviews and debriefings of individuals involved in those offenses, I have learned about the manner in which individuals and organizations finance, purchase, transport, and distribute firearms and narcotics both within and outside of Wisconsin. I have utilized informants to conduct "controlled purchases" of firearms and controlled substances from individuals, as opposed to licensed gun dealers. I have also conducted surveillance of individuals engaged in firearms and drug trafficking and participated in the execution of numerous search warrants resulting in the seizure of drugs, firearms, ammunition, and magazines.

6. Based on my training and experience, I have become familiar with the language utilized over the telephone to discuss firearms and drug trafficking and know that the language is often limited, guarded, and coded. I also know that firearms and drug traffickers often use electronic devices (such as computers and cellular phones) and social media to facilitate these crimes. Based on my experience, I know that firearms traffickers may keep photographs of these items on electronic devices.

7. I also know that drug traffickers and firearms traffickers commonly possess—on their person, at their residences, at their places of business, in their

2

vehicles, and other locations where they exercise dominion and control—firearms, ammunition, and records or receipts pertaining to such.

8. I know that firearms traffickers and drug traffickers often put their telephones in nominee names to distance themselves from telephones that are utilized to facilitate these and related offenses. I also know that firearm and drug traffickers often use proceeds to purchase assets such as vehicles, property, jewelry, and narcotics. I also know that firearm and drug traffickers often use nominees to purchase or title these assets to avoid scrutiny from law enforcement.

9. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other investigators and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrants and does not set forth all of my knowledge about this matter.

10. There is probable cause to believe that evidence of violations of the following laws of the United States, including the things described in Attachment B, will be found in the property listed in Attachments A, respectively evidence of Title 18 U.S.C. § 2119 (carjacking) and Title 18 U.S.C. § 924(c)(use of a firearm during the commission of a violent crime) is housed within the aforementioned cellular devices.

11. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other investigators and witnesses. This affidavit is intended to show merely that there is sufficient probable

3

cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF PROPERTY TO BE SEARCHED

12.     The property to be searched is two electronic storage devices associated with Milwaukee Police Department Inventory No. 24000904, which can be further described as;

> a. Blue Apple iPhone (unknown model, unknown serial number, contained on Milwaukee Police Department Inventory No. 24000904, Item 1, **TARGET CELL PHONE 1)**
> b. Black Apple iPhone with "Backwoods" branded case (model unknown, serial no. unknown, contained on Milwaukee Police Department Inventory No. 24000904 Item 2, **TARGET CELL PHONE 2**)

The applied-for warrant would authorize the search and recovery of evidence particularly described in Attachment B.

## PROBABLE CAUSE

### October 26, 2023 Carjacking (Location 1 and 2)

13.     On October 26, 2023, the Milwaukee Police Department (MPD) responded to an armed carjacking which occurred at 3915 S. Logan Avenue, Milwaukee, Wisconsin (Location 1). When officers arrived the spoke to the victim, identified as B.F. (DOB XX/XX/1989) who stated he was seated in the driver's seat of his vehicle, a gray 2018 Volkswagen Passat sedan (bearing Wisconsin license plate ARV1960), using an iPad for work purposes. B.F. stated at approximately 5:20 pm (CST) he observed an unknown black male (suspect 1) walk up to his front driver's door, open the closed door, and

4

order him out of the vehicle. B.F. stated suspect 1 pointed, what B.F. believed to be, a black semi-automatic with a light-colored grip, at his head. B.F. stated he complied and exited the vehicle. B.F. stated after he got out of the vehicle, suspect 1 grabbed him and pulled him to the middle of S. Logan Avenue and asked B.F. what other property he possessed. B.F. stated he told suspect 1 he had a wallet and suspect 1 took the wallet from him. B.F. stated suspect 1 then got into the driver seat of the aforementioned Volkswagen sedan, and another black male (suspect 2), got into the front passenger seat. B.F. stated the suspects then drove away west bound in the alley from S. Logan Avenue.

14.     B.F. described suspect 1 as a black male, late teens to early 20's, approximately 5'10", skinny build, wearing a charcoal gray hooded sweatshirt with the hood up, and blue jeans with different shades. B.F. stated the sweatshirt had a large lighter colored emblem on the chest.

15.     B.F. described suspect 2 as a black male, unknown age, approximately 5'04" to 5'07", skinny build, wearing a dark gray hooded sweatshirt with the hood up.

16.     MPD detectives later spoke to witness J. N. who stated she observed two black males, wearing hooded sweatshirts enter a gray vehicle and drive away. Detectives located and viewed ring doorbell footage which corroborated the victim's statement of events. Detectives describe suspect 1 as black male, approximately 5'10", skinny build, wearing a dark colored hooded sweatshirt with a large white or light-colored chest emblem on it, possibly blue jeans, and dark shoes. Suspect 2 was observed

to be a black male, approximately 5'05", skinny build, wearing a light gray hooded sweatshirt with the hood up, dark pants, and white or light-colored shoes.

17.     A short time later, MPD responded and talked to a witness, N.S.  N.S. stated at approximately 05:30 pm, they were jogging westbound on E. Howard Avenue past S. Pine Avenue, when he located an Apple iPhone in the middle of the sidewalk on the north end of E. Howard Ave. just west of S. Pine Avenue (Location 2).  N.S. stated he called the number displayed on the phones lock screen and it resulted in MPD being dispatched to his location.  The phone was determined by MPD to be B.F.'s phone, which was inside his vehicle during the carjacking, and was subsequently returned to B.F.

**Auto Zone Purchase (Location 3)**

18.     While conducting their investigation into the October 26, 2023 carjacking of the aforementioned Volkswagen Passat sedan, Detectives determined the vehicle was spotted at an Auto Zone, located at 208 E. Capitol Drive, Milwaukee, Wisconsin (Location 3), on October 27, 2023 at 12:38 pm (CST).  Video footage collected from the business depicts the aforementioned Volkswagen Passat sedan arrive and park in the parking lot of the business.  MPD Detective Michael Martin observed the front passenger exit the vehicle.  Det. Martin recognized this individual to be Suspect 1 from the carjacking on October 26, 2023.  The surveillance footage further depicted Suspect 1 enter the store and purchase a roll of window tint, which the suspect pays for by

6

utilizing his phones tap-to-pay feature, at the register. Suspect 1 then exits the store, gets back into the front passenger seat of the Passat, and the vehicle drives away.

19. Det. Martin further described Suspect 1, from the surveillance video, as a black male, approximately 20 years old, 5'10" to 6'00", skinny build, dark complexion, wearing a black "pooh sheisty" pull over head mask, a black hooded sweatshirt with a cartoon "Popeye the Sailor Man" emblem on it, black jogging pants with a vertical gray stripe on the side, and a possible Milwaukee Bucks deer head logo on the stripe, electric blue underwear, black shoes and white socks.

**October 27, 2023 Fleeing/Eluding MPD (Location 4 and 5)**

20. On October 27, 2023, at approximately 5:53 pm (CST), MPD observed a vehicle matching the description of the aforementioned Volkswagen Passat, which officers knew to be stolen, driving southbound on N. 51st Street from W. Capitol Avenue (Location 4). MPD Officers initiated a traffic stop, in their fully marked MPD squad, and the vehicle failed to stop and fled from officers at a high rate of speed. MPD maintained visual contact of the vehicle until the pursuit ended in the area of 2301 N. 18th Street (Location 5), when the vehicle stopped, and four occupants fled on foot. MPD gave chase and arrested two of the four occupants the vehicle. The occupants were further described as:

- Driver of the vehicle, arrested and identified as John M. DAVIS (B/M, XX/1997), wearing a dark colored hooded sweatshirt with a "Glock"

firearms brand graphic and white writing with the text "No Gun, No Fun" on the back of the sweatshirt.

- Rear driver side passenger, arrested and identified as Willie E. ADAMS (B/M, DOB 12/02/1997)

- Front passenger, black male, wearing a black hooded sweatshirt, red track pants with white stripes

- Rear passenger side passenger, black male, wearing a black hooded sweatshirt, black pants and blue underwear

**Timing Advanced Area Searches and Tower Dumps**

21.     On November 06, 2023, the Honorable William Duffin, U.S. Magistrate Judge in the Eastern District of Wisconsin signed a search warrant and court order which authorized Timing Advance Area Searches and tower dumps in relation to the offenses listed above.  These warrants returned thousands of lines of cellular data and information which was then analyzed to initially identify only those identifiers whose records were consistent with the facts of the investigation, including being in the geographic area of more than one location.  As a summary the following locations were queried:

- Location 1 – 3915 S. Logan Ave, Milwaukee, Wisconsin on October 26, 2023

- Location 2 – Intersection of E. Howard Avenue and S. Pine Avenue, Milwaukee,

8

Wisconsin on October 26, 2023

- Location 3 – 208 E. Capital Drive, Milwaukee, Wisconsin on October 27, 2023

- Location 4 – Intersection of N. 51st Blvd. and W. Capitol Drive, Milwaukee, Wisconsin on October 27, 2023

- Location 5 – 2301 N. 18th Street, Milwaukee, Wisconsin on October 27, 2023

**Analysis of Timing Advanced Area Searches and Tower Dumps**

22.     The information was analyzed by the Federal Bureau of Investigation (FBI) Cellular Analysis Team who provided the information to the affiant and summarized the info below as to the identification of **(414) 435-6392 (Suspect Device 1), (414) 416-3779 (Suspect Device 2),** and **(414) 539-8890 (Suspect Device 3).**

23.     The initial review provided to the affiant for the US Cellular and AT&T returns provided an initial list of approximately **twenty (20) phone numbers** which hit at least two (2) of the five (5) locations which would include records around the carjacking locations (Location 1 and 2) **and** any of the other locations which include the Auto Zone (Location 3) and Fleeing/Eluding (Location 4 and 5).  This initial analysis was done due to the largest distance being between the carjacking locations and other points.  Your affiant notes that the 20 phone numbers were provided to him out of thousands of other identifiers and included **Suspect Device 2** and **(414) 539-8890**

9

**Suspect Device 3**.  Furthermore, **Suspect Device 3** was noted to have had records at three (3) locations.

24.     After reviewing the initial information from AT&T and US Cellular your affiant received the results from T-Mobile which were then analyzed and revealed that a unique **International Mobile Subscriber Identity (IMSI) 310260685268367** had records within all five (5) search locations.  Additionally, the tower dump records were reviewed for that IMSI which showed the associated phone number for that IMSI as **(414) 435-6392 (Suspect Device 1).**

25.     Your affiant notes that the Timing Advance area searches provide more detailed location information for the cellular devices, but communications such as voice and text are contained within the tower dump records.  The tower dump records were reviewed, and it was identified that **Suspect Device 1** and **Suspect Device 2**, both had phone contact with the phone number **(414) 539-8890 (Suspect Device 3).** Additionally, **Suspect Device 3** was identified as having records at three (3) locations and within the initial 20 phone numbers provided to your affiant.

26.     In summary, the Suspect Devices have records in the below locations and communication with each other as noted below.  Your affiant further notes that for the purpose of the analysis the two locations for the carjacking (Location 1 and Location 2) are extremely close in proximity and are summarized as a single location/event below.

    a.     **Suspect Device 1**:  Records within all five (5) search areas (4 main locations) and         communication with (414) 539-8890 (Suspect Device 3)

10

b.     **Suspect Device 2**:  Records within two (2) main locations – Carjacking and

AutoZone and communication with (414) 539-8890 (Suspect Device 3)

c.     **Suspect Device 3**:  Records within three (3) main locations – Carjacking

and two      (2) Fleeing/eluding and communication with (414) 435-6392

(Suspect Device 1) and (414) 416-3779 (Suspect Device 2)

27.     Based on the multiple locations for all the Suspect Devices, including all

Suspect Devices having records in the geographic area of the carjacking, in addition to

the Suspect Devices being in contact with another as noted above, there is probable

cause to believe that the users of the Suspect Devices are involved in the violations

being investigated and that obtaining both historical and prospective location

information will provide evidence of the violations including but not limited to the

identities of the subjects, and the locations where they live and the physical cellular

device both which can contain additional evidence related to the investigation.

**John M. DAVIS as the user of (414) 435-6392 (Suspect Device 1)**

28.     Following the arrest of John M. DAVIS on October 27, 2023, MPD

Detectives conducted a mirandized interview with DAVIS.  DAVIS stated there were

four occupants inside the aforementioned Volkswagen sedan during the pursuit, and he

admitted to being the driver.  DAVIS stated he did not know the car was stolen and was

fleeing because he did not have a valid driver's license.  Davis stated the car belonged to

the neighbor of his girlfriend, whom DAVIS knew only as "K".  DAVIS described "K"

as a black male, and DAVIS stated "K" was in the front passenger seat of the vehicle at

11

the time of the pursuit. DAVIS stated he had two phones that belonged to him in his possession during the pursuit. DAVIS stated he had an Apple iPhone 11 with no case, with the phone number of "(414) 425-6392". It should be noted, **Suspect Device 1** has the phone number **(414) 435-6392,** leading your affiant to conclude DAVIS changed one digit in an attempt to conceal the true number from MPD.

29.     Your affiant queried recorded jail calls placed from the Milwaukee County Jail to **Suspect Device 1** and determined inmate John DAVIS placed one call to **Suspect Device 1** on October 31, 2023, and one call on November 1, 2023. Your affiant also learned John DAVIS placed 44 calls to **Suspect Device 2**, while in custody, between October 29, 2023, and December 19, 2023, and 53 calls to **Suspect Device 3**, while in custody, between November 01, 2023, and December 19, 2023.

30.     On October 29, 2023, DAVIS placed a recorded phone call to an unknown male using **(414) 416-3779 (Suspect Device 2).** During the phone conversation, DAVIS directs the unknown male to hold onto the phone for him while he is in custody, and the unknown male agrees. During this call, DAVIS self-identified himself. In numerous other jail calls placed to **(414) 416-3779 (Suspect Device 2)** between October 29, 2023 and November 12, 2023, DAVIS directs this same unknown male to go into DAVIS' phone and provide him with various phone numbers, which the unknown male does.

**Alvin L. NICKSION as the user of (414) 416-3779 (Suspect Device 2)**

31.     On December 04, 2023, your affiant queried the telephone number **(414) 416-3779 (Suspect Device 2)** through North Central High Intensity Drug Trafficking

12

Area (HIDTA), a state and federal law enforcement taskforce. Your affiant was notified by North Central HIDTA, that this number was identified in HIDTA reports and HIDTA case management software as active number pertaining to an ongoing Milwaukee Police Department narcotics investigation. Your affiant spoke to MPD Det. John Schott, who stated the MPD had determined that the current user of **Suspect Device 2** is identified as Alvin NICKSION (b/m, DOB XX/XX/1991).

a.  A search of NICKSION's criminal history revealed he has previous felony convictions in the state of Wisconsin for Burglary Any Building or Dwelling, and Retail Theft.

b.  A search of Wisconsin DMV records list NICKSION's residence as 1128 W. Keefe Avenue, Milwaukee, Wisconsin **,** which is in the Eastern District of Wisconsin.

c.  A search of common law enforcement databases also listed NICKSION as residing at 1128 W. Keefe Avenue, Milwaukee, Wisconsin from June of 2012 to present**.**

d.  Analysis of historical location data collected for **Suspect Device 2** revealed the phone was pinging on a cellular tower that covered 1128 W. Keefe Avenue, Milwaukee, Wisconsin during the overnight hours every night from January 15, 2024, to January 21, 2024, as well as the overnight hours of January 23, 2024. The historical records which were analyzed did not include data past January 23, 2024.

13

e. On January 25, 2024, ATF personnel conducted a trash pull at 1128 W. Keefe Avenue, Milwaukee, Wisconsin **,** but no mail was recovered.

## Recovery of Target Phones

32.     On December 08, 2023, personnel from HIDTA and Milwaukee Metropolitan Drug Enforcement Group (MMDEG) executed a state search warrant at 2200 N. 31st Street, unit 117.  Alvin NICKSION was present at this location during the warrant execution, and during search, investigators located three (3) cellular phones, one (1) round of .40 caliber ammunition, a pistol brace, two (2) pill bottles containing suboxone strips, and a multi-colored zip lock style dispensary bag that contained 2.79 grams of green leafy substance which was consistent in appearance with marijuana. The cellular phones were located in a bedroom which contained NICKSION's clothing and other personal effects.

33.     Investigators subsequently obtained a state search warrant on January 10, 2024 for two (2) of the cellular phones recovered in the aformentioned warrant. Det. Schott later provided details to SA Rutter that **TARGET CELL PHONE 2,** was found to have the phone number **(414) 435-6392 (Suspect Device 1)** and was registered to Apple ID: johndavism97@gmailcom.  Your affiant is aware DAVIS directed NICKSION to hold onto his phone, which is **Suspect Device 1**, while DAVIS was in custody.  (Paragraph 29, above). The two cellular devices are more particularly described as:

a.   Blue Apple iPhone (unknown model, unknown serial number, contained on Milwaukee Police Department Inventory No. 24000904, Item 1, **TARGET CELL PHONE 1)**

b. Black Apple iPhone with "Backwoods" branded case (model unknown, serial no. unknown, contained on Milwaukee Police Department Inventory No. 24000904 Item 2, **TARGET CELL PHONE 2**)

34.     On January 08, 2024, the Honorable William Duffin, U.S. Magistrate Judge in the Eastern District of Wisconsin signed a search warrant which allowed for the real-time collection of location data for **(414) 416-3779 (Suspect Device 2).** The warrant also provided for the collection of historical location data for **Suspect Device 2.**

35.     On January 19, 2023, location data for **Suspect Device** 2 indicated the device was pinging on a cellular tower which covered 1128 W. Keefe Avenue**.** ATF personnel responded and conducted surveillance in the area of 1128 W. Keefe Avenue **.** Between approximately 08:40 AM and 09:15 AM CST, your affiant observed a black male, wearing a black winter jacket and pants, and a black hat shoveling snow outside 1128 W. Keefe Avenue**.** The unknown male had the same build (i.e. height, weight, hair color, skin tone) as NICKSION. During this time, ATF SA Jody Keeku observed the male enter and exit both the front and side door to the residence freely without keys on numerous occasions.

## CONCLUSION

36.     I believe there is probable cause that additional communications and location data relevant to both John DAVIS, Alvin NICKSION and possible co-conspirators contained on the TARGET CELL PHONES. Further, I believe there is probable cause the TARGET CELL PHONES contain evidence of the following crimes associated with John DAVIS and Alvin NICKSION which constitute violations of Title

15

18 U.S.C. § 2119 (carjacking) and Title 18 U.S.C. § 924(c)(use of a firearm during the commission of a violent crime).

37.     Your Affiant is aware that cellphones, tablets, computers and usb hard drives can be used to store information including photographs, text messages, multimedia messages, and a history of incoming and outgoing calls, contact/address book information, photographs, video and other data.

38.     Similarly, your affiant is aware that many cellphones, tablets, computers and usb drives contain a list of contacts and associate names, and cellphone numbers and other identifying information.  Your Affiant asks that this information be included in the search warrant, as it will assist in identifying the user/owner of the cellphone, individuals with whom the user had contact, and may provide evidence of the source of any guns involved in this investigation.

39.     Your Affiant is also requesting an authorized search of cellphone devices and computers to include all removable drives, cards, memory devices or similar devices attached to or contained within said cellphone or computer. Your Affiant is aware that cellphones, tablets, and computers frequently contain SD cards or other removable memory/storage devices upon which data, including photographs, videos, and other information, may be stored.

40.     Your Affiant is aware that many cellphones, tablets and computers capture or otherwise store GPS location tracking/logging files, may provide additional evidence as to the targets travels and may provide evidence as to the location where the

16

alleged illegal actions occurred. Similarly, said information may assist law enforcement with locating and identifying other subjects with whom the target was involved in related to narcotics trafficking, including by identifying the place or places where said illegal possession of firearms and/or narcotics may have occurred.

## TECHNICAL TERMS

41.     Based on my training and experience, I use the following technical terms to convey the following meanings:

42.     Wireless cellphone:   A wireless cellphone (or mobile cellphone, or cellphone) is a handheld wireless device used for voice and data communication through radio signals.    These cellphone send signals through networks of transmitter/receivers, enabling communication with other wireless cellphone or traditional "land line" cellphone.   A wireless cellphone usually contains a "call log," which records the cellphone number, date, and time of calls made to and from the cellphone.   In addition to enabling voice communications, wireless cellphone offer a broad range of capabilities.   These capabilities include: storing names and cellphone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.   Wireless cellphone may also include global positioning system ("GPS") technology for determining the location of the device.

17

43.     Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images.  This storage media can contain any digital data, including data unrelated to photographs or videos.

44.     IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet.  An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).  Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination.  Most Internet service providers control a range of IP addresses.  Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

45.     Internet: The Internet is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

46.     Based on my training, experience, and research, I know that these

18

cellphone devices have capabilities that allow them to serve as a wireless cellphone, digital camera, GPS navigation device, portable storage, and a tablet. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

### ELECTRONIC STORAGE AND FORENSIC ANALYSIS

47.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

48.     There is probable cause to believe that things that were once stored on the device may still be stored there, for at least the following reasons:

a.  Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet.  Electronic files downloaded to a storage medium can be stored for years at little or no cost.  Even when files have been deleted, they can be recovered months or years later using forensic tools.  This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

19

b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

49. Forensic evidence. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as

20

direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the device because:

e. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

f. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing

21

a search warrant at a residence.

g. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

h. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

i. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

50. Nature of examination. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the devices

consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

51. Manner of execution. Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## ATTACHMENT A

### Property to Be Searched

1.      The property to be searched is one electronic storage device associated

with Milwaukee Police Department Inventory no. 24000904 which can be further

described as;

   a.  Blue Apple iPhone (unknown model, unknown serial number, contained on Milwaukee Police Department Inventory No. 24000904, Item 1, **TARGET CELL PHONE 1)**

   b.  Black Apple iPhone with "Backwoods" branded case (model unknown, serial no. unknown, contained on Milwaukee Police Department Inventory No. 24000904 Item 2, **TARGET CELL PHONE 2**)

1

**ATTACHMENT B**

**Particular Things to be Seized**

1.      All records on cellular phones related to violations of 18 U.S.C. § 2119 (carjacking), Title 18 U.S.C. § 924(c) (use of a firearm during the commission of a violent crime).

      a.   any information related to possession of firearms or ammunition (including photographs, text messages, emails, or any other communication information);

      b.   GPS information and any other location service data from the phone and/or from any downloaded applications;

      c.   Internet search history and browser history related to firearms or location searches;

      d.   call history;

      e.   contact list, to include names, addresses, phone numbers, and/or email addresses;

      f.   any video and/or photograph(s) on the phone related to firearms;

      g.   any text messages exchanged or drafted that seem to relate to firearms, controlled substances, and/or other criminal activity;

      h.   lists of customers and related identifying information;

      i.   any information recording the cell phone holder's schedule or travel; and

      j.   all bank records, checks, credit card bills, account information, and other financial records.

2.   Evidence of user attribution showing who used or owned the devices at the time the

2

things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

3. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of electronic storage and any photographic form.

3